IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Dan G. Christy,                                        Case No. 3-05CV07341

        Plaintiff,

   v.                                                ORDER

Continental Tire North America, Inc.,

        Defendant.

This is a case alleging discriminatory treatment of a disabled employee and invasion of his privacy.  Plaintiff Dan G. Christy sues his former employer, Continental Tire North America, Inc. (Continental), for allegedly improperly requiring him to undergo a fitness-for-duty (FFD) examination in violation of 42 U.S.C. § 12112(d)(4)(A) of the Americans with Disabilities Act (ADA).

Jurisdiction for the ADA claim exists under 28 U.S.C. § 1331.  Jurisdiction exists for the Ohio common law invasion of privacy claim under 28 U.S.C. § 1367.

Pending is Continental's motion for summary judgment.  For the reasons that follow, Continental's motion shall be granted.

**Factual Background**

Christy began working for Continental as a tire builder in September, 1987, at its Bryan, Ohio facility.  At that time, Christy joined the United Steelworkers of America, Local 890L.  Christy became a maintenance first class employee in 2002 and held this position when the events giving rise to the present action occurred.

The maintenance first class position entails compulsory overtime, which is assigned based on seniority.  After all senior personnel decline the option of working overtime, the hours become mandatory for the least-senior employees.  Christy's status as the least-senior maintenance first class worker at the Bryan Facility during May and June, 2004, resulted in his receiving more mandatory overtime shifts than his coworkers.

In 2004, Christy was commissioner of a girls' softball league, and coached the team for which his daughters played.  Continental denied Christy's request for time off work to attend a softball tournament in June, 2004.

Following this refusal, Christy presented Continental with a work restriction from Dr. Vandehey on June 22, 2004.  The restriction ordered that Christy not work more than forty hours per week until the earlier of either a reevaluation or July 27, 2004.  Dr. Vandehey did not state an underlying cause for the restriction until Continental requested more details. Dr. Vandehey's revised restriction indicated Christy suffered from acute anxiety, a condition serving as the basis for the previous restriction.

Continental complied with Dr. Vandehey's restriction and scheduled the FFD examination now at issue.  Christy attended the FFD on July 12, 2004, accompanied by a union representative. Dr. Kestenbaum conducted Christy's FFD and wrote an evaluative report.  Continental received the report on August 9, 2004.  It stated Christy's generalized anxiety caused insomnia and that Dr. Vandehey's restriction should remain in effect, due to the potential dangers of functioning in an industrial environment without adequate rest.

Dr. Vandehey's July 21, 2004, reevaluation of Christy resulted in an extension of the forty-hour per week restriction until the earlier of either a third evaluation or August 9, 2006.  In

2

July, 2004, Dr. Vandehey prescribed Christy amitriptyline, a sleep aid.  Christy indicated the drug alleviated his sleeping problems soon after he began taking it.  Christy vacationed out of state from August 9, 2004, through August 23, 2004, during which time he did not work.

Continental informed Christy on his return from vacation that, despite the expiration of Dr. Vandehey's restrictive order, the limitation remained in effect based on Dr. Kestenbaum's evaluation. At this time, Continental also indicated that when and if Christy could produce a medical release stating his insomnia no longer posed a threat, it would eliminate the restriction.

Christy filed charges on August 24, 2004, with the Ohio Civil Rights Commission (OCRC) and the Equal Employment Opportunity Commission (EEOC) alleging discriminatory treatment. While those charges were pending, Continental, after receiving a report from plaintiff's psychologist lifting the restriction, permitted Christy to resume working overtime.

On February 24, 2005, the OCRC issued a finding of no probable cause with regard to Christy's discrimination charge.  The EEOC likewise found no probable cause and issued Christy a Dismissal and Notice of Rights on May 19, 2005.

### Discussion

Summary judgment is appropriate if it is shown "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Bell v. Marinko*, 367 F.3d 588, 591 (6th Cir. 2004) (citing *Shah v. Deaconess Hosp.*, 355 F.3d 496, 498 (6th Cir. 2004)).  In viewing the evidence, I must draw all reasonable inferences in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Best v. Cyrus*, 310 F.3d 932, 934 (6th Cir. 2002); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc*., 253 F.3d 900, 907 (6th Cir. 2001).

I.  FFD Examination

Christy alleges Continental improperly required him to undergo the July 12, 2004, FFD examination.  Pursuant to the ADA, employers may not require employees to undergo medical examinations or make inquiries pertaining to the existence of a disability unless the examination or inquiry is both job-related and consistent with business necessity.  42 U.S.C. § 12112(d)(4)(A).

Courts uphold an employer's post-hiring examination demand on a showing of significant proof that might reasonably evoke inquiry as to whether the employee can perform essential job functions.  *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 811 (6th Cir. 1999).  Inefficient or annoying employee behavior does not alone justify an examination.  *Id.*  In Sullivan, the Sixth Circuit held that a school properly ordered a teacher to undergo an examination since the teacher's recent disruptive conduct at staff meetings, disclosure of a student's confidential data, and failure to attend a meeting with the superintendent gave the school district genuine reason to question the teacher's continuing ability to educate.  *Id.* at 809, 812.

Like the employer in *Sullivan*, Continental properly required Christy to undergo the FFD examination at issue here.  Christy's presentation of the work restriction from his doctor caused Continental reasonable concern as to Christy's ability to continue working in his maintenance first class capacity.  The newly-imposed limitation on the number of hours Christy could work each week directly impacted his employment, thus making an examination for verification purposes job-related and consistent with the needs of Continental's daily and ongoing business.

Moreover, an employer is entitled to verify the existence of an employee's impairment that could require accommodation on the part of the employer.  *Kennedy v. Superior Printing Co.*, 215 F.3d 650, 656 (2000); *Equal Employment Opportunity Comm'n. v. Prevo's Family Mkt.*, 135 F.3d

4

1089, 1094 (6th Cir. 1998).  The Court in *Prevo* reasoned that such verification is necessary to avoid unwarranted employee demands for special work restrictions, and to encourage cooperative interaction between an employer and an employee in furtherance of ascertaining the nature and scope of accommodations required.  135 F.3d at 1094–1095 (holding that a grocery store could require an employee, who informed the employer of a positive HIV test, to undergo an examination to protect the employee, other employees, and general public).

Like the employee in *Prevo*, Christy told Continental of a serious medical condition and presented a doctor's work restriction.  Continental, on receiving notice of Christy's condition and its impact on his work schedule, could lawfully demand that Christy submit to a FFD examination.  Continental's FFD examination of Christy verified the purported problem.  In addition, Dr. Kestenbaum initially was able to connect Christy's condition with potential dangers posed by working while fatigued in an industrial setting.

## II.  Discrimination Based on Disability

Christy next alleges Continental discriminated against him based on his disability.  The viability of this claim turns on whether Christy can initially establish a prima facie ADA discrimination claim.  To do so, he must show: 1) he suffers from a disability, as defined in the ADA; 2) he is qualified to complete essential job functions; and 3) his employer took adverse action against him due to his disability.  *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir. 1997).

Christy fails to establish that he is disabled within the ADA parameters.  The ADA defines a "disability" as: 1) a mental or physical impairment that substantially limits one or multiple of the individual's major life activities; 2) the existence of a record of that impairment; or 3) being regarded

as having such an impairment. 42 U.S.C. § 12102(2). To meet the ADA standard, an impairment must have the present effect of substantially limiting a major life activity, rather than the mere possibility or potential for such an effect. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482 (1999).

In *Sutton*, an airline rejected pilot applications from individuals failing to meet minimum eyesight requirements, even though the applicants had perfect vision with the aid of corrective lenses. *Id*. at 475–476. The Supreme Court reasoned that where an individual's impairment is remedied through medicine or other means, such impairment does not substantially limit major life activities. Id. at 482–483. The Court further reasoned that while an individual technically remains impaired, the impairment in its corrected form no longer hinders any major life activity. Id. at 483.

Here, Christy stated that medication alleviated his insomnia. He noticed that his sleeping condition improved almost as soon as he began taking the amitriptyline that Dr. Vandehey prescribed in July, 2004. In view of this acknowledgment, Christy's impairment does not constitute a substantial limitation on his ability to sleep or work.

Moreover, although the ability to work qualifies as a major life activity, an employee precluded from performing one specific job is nonetheless not substantially limited. *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 811 (6th Cir. 1999). An employee's diminished ability to perform a particular job does not rise to the level of a disability. *Id*.

Despite his impairment, Christy remained capable of performing his job as a maintenance first class employee for Continental. Christy was also not precluded from performing some particular category of jobs. A temporary inability to work overtime, while limiting in nature, is not such a substantial limitation as to constitute a disability for ADA purposes.

6

Plaintiff's claim that Continental regarded him as disabled individual fails because an employer's demand for an otherwise lawful mental or physical examination does not reflect a belief that the employee is disabled. *Sullivan, supra*, 197 F.3d at 808. In *Sullivan*, the Sixth Circuit reasoned that an employer could perceive that aberrant behavior might reflect a health problem detrimental to the employee's job performance without actually regarding the employee as disabled. *Id*. at 810. Here, Continental's requirement that Christy undergo the FFD does not, without more, establish that it regarded him as having a disability.

Furthermore, for an employer to regard an employee as disabled, the employer must either incorrectly believe that an employee has a disability or misperceive that an individual's impairment as substantially limiting one or more major life activity. Here, Continental did not operate under a mistaken belief that Christy's condition was severe or a substantial limitation. Rather, Continental continued to allot overtime shifts to Christy until presented with Dr. Vandehey's restrictive order. Additionally, Continental ordered Christy to undergo the FFD examination to ascertain the severity of his impairment to avoid operating under a misperception regarding Christy's condition.[1]

---

[1]

The Southern District of Ohio recently found that an employer did not regard an employee who suffered from bipolor disorder and various stress-related conditions as disabled. *Edwards v. Dialysis Clinic, Inc.*, 423 F.Supp.2d 789, 792, 798 (S.D. Ohio 2006). In *Edwards*, the court noted that although the employer knew about the employee's impairments, the employer did not regard those problems as substantially limiting, since the employer increased the employee's job duties and gave the employee favorable performance reviews. *Id*. at 797–798. Additionally, the employer tried to accommodate the employee's impairments and did not reduce his pay or benefits. *Id*. at 798.

Similarly, Continental did not regard Christy as having a substantially limiting disability since it continued to include him in the company's procedure for distributing overtime hours. Like the employer in Edwards, Continental accommodated Christy's impairment by complying with Dr. Vandehey's work restriction. It also further investigated the impairment through a report based on the FFD examination by its own physician. There is no evidence that Continental regarded Christy's sleeping problem as a substantial limitation on his ability to perform major life functions.

Christy alleges that a supervisor made an isolated comment concerning Christy's mental wherewithal. There is, however, no contention that the employer treated Christy differently from his coworkers. There is also no indication that this remark alerted Christy to the fact that Continental perceived him as disabled.

In any event, the supervisor allegedly made this statement in April, 2005, almost a year after Christy began receiving treatment to correct his sleeping problems. This hardly suggests that Continental regarded Christy as disabled during the Summer of 2004.

Finally, it is not apparent from Christy's claim that Continental subjected him to a detrimental employment action due to his alleged disability. An employer's valid requirement that an employee undergo an examination does not rise to the level of an adverse employment decision. *Sullivan, supra,* 197 F.3d at 813. Here, Continental properly required Christy to undergo the FFD at issue. That action does not alone constitute discrimination. Additionally, Continental did not make any other employment decisions concerning Christy that a court could construe as evidencing disability-motivated discrimination.

Dr. Kestenbaum's evaluation of Christy paralleled the evaluation that Christy's own doctor provided. Both doctors regarded the limitation on Christy's work schedule as necessary to avoid the dangers associated with working while sleep-deprived in an industrial environment. Continental accommodated Christy's impairment by eliminating him from the overtime rotation and limiting his work schedule to 40 hours per week. Furthermore, Continental lifted the work restriction and again permitted him to work overtime after receiving a written release indicating that his insomnia no longer posed a threat to his ability to remain awake and alert at work.

### III.  State Law Invasion of Privacy

8

Christy also alleges Continental's imposition of the FFD examination constituted an invasion of privacy under Ohio common law. Invasion of privacy in Ohio may occur either by: 1) intrusion into one's private affairs in such a way as to cause humiliation, shame, or mental suffering to a person of ordinary sensitivity; 2) publicizing a person's private activities of which no legitimate public concern exists; or 3) unjustified exploitation of one's personality. *Housh v. Peth*, 133 N.E.2d 340, 341 (Ohio 1956); *see also Jackson v. City of Columbus*, 67 F.Supp.2d 839, 868–869 (S.D. Ohio 1998).

Christy contends that Continental's improper intrusion caused him, as a person of ordinary sensibilities, extreme embarrassment and shame. Christy makes no allegation, however, that Dr. Kestenbaum performed the FFD examination in a manner that caused humiliation, shame, or mental harm. Rather, Christy contends that the improper intrusion occurred wholly by way of Continental's requiring his very submission to the examination.

In ordering Christy's participation in the FFD examination, Continental sought nothing more than to verify a recently submitted work restriction, which Christy's doctor ordered, and which created the need for a significant alteration in how Continental allocated overtime in Christy's department. Since Continental acted properly not only in requiring the FFD examination of Christy, but also in the manner in which Dr. Kestenbaum conducted the examination, Christy's invasion of privacy claim must fail.

## Conclusion

It is therefore,

ORDERED THAT the defendant's motion for summary judgment be, and the same is hereby granted.

9

So ordered.

/s/ James G. Carr
James G. Carr
Chief Judge